EARL HUNGATE, Appellant, v. FINIS B. HUDSON, Doing Business as F. B. HUDSON MOVING COMPANY.—No. 39092.—185 S. W. (2d) 646.

Division Two, February 5, 1945.

Rehearing Denied, March 5, 1945.

*Everett Hullverson* for appellant; *Orville Richardson* of counsel.

*Wilbur C. Schwartz* for respondent.

BARRETT, C.—In this personal injury action by Earl Hungate against Finis B. Hudson the jury returned a verdict for the defendant. The circumstances upon which the plaintiff relied as demonstrating liability were that he stopped his 1935 Chevrolet coupe upon the highway while a freight train passed over the intersecting crossing. His was the third car in a line of traffic, and the plaintiff and his witnesses claimed that while he was yet stopped upon the highway the defendant's truck, without warning and at a speed of about forty miles an hour, crashed into the rear of his coupe and knocked it sixty or seventy feet across the double tracks. According to the defendant the circumstances of the occurrence were that the truck driver saw the cars stopped at the crossing when the truck was a quarter of a mile away and began slackening the speed of the truck and came to a stop just behind the plaintiff's car. As the plaintiff moved forward and the defendant's truck was proceeding slowly behind him the plaintiff suddenly and without warning stopped his

946

automobile in such close proximity to the truck that it was impossible to avoid a collision, which was of but slight impact and caused but little damage.

The plaintiff, Hungate, was sixty-five years old and had resided in Mt. Vernon, Illinois, for forty-five years. He was or had been a United States Deputy Marshal and for three years had been employed as a salesman by the L. B. Price Mercantile Company. He worked out of the Marion, Illinois, branch of the company and on the date of this occurrence, on U. S. Highway 50 near Shattuc, Illinois, was engaged in his employment. The defendant, Hudson, was engaged in the storage and moving business. His office was located in Overland, Missouri. He had twelve trucks and fifteen or twenty employees. The truck involved in this collision was driven by Ed Kreysar and was returning home after having delivered furniture in Indianapolis and Louisville. Hungate v. Hudson (Mo.), 169 S. W. (2d) 682.

It is urged, upon this appeal by the plaintiff, that the trial court permitted defendant's counsel to improperly cross-examine him and because of the prejudicial effect of the cross-examination he is entitled to a new trial. It is contended by the defendant that under the plaintiff's general objection of immateriality he is limited on this appeal solely to the ground stated and that the admission of wholly irrelevant or immaterial evidence cannot constitute reversible error. It is also contended that the cross-examination was proper and relevant because it bore upon the plaintiff's credibility.

 The cross-examination complained of, particularly the underscored sentences, is the following:

"Q. You have had experience with a lot of lawyers, then, haven't you? A. I have been around a lot of lawyers, yes.

"Q. Been around the courts over there when cases were tried? A. Yes, I have been around some of them.

"Q. Your father, I believe, was connected with a very prominent lawyer over there, wasn't he? A. Yes, he was.

"Q. You know this law business fairly well, from a layman's standpoint? A. I never had any experience in the law business myself, but I have been around places—

"Q. Been around? A. Yes.

"Q. *You could have brought this suit over in Illinois, couldn't you?*

"By Mr. Hullverson: I object to that, if the Court please, there is no duty on him to bring a suit in Illinois.

"By Mr. Schwartz: That is not the question.

"By Mr. Hullverson: And it is absolutely immaterial.

"By the Court: It is cross-examination, he may answer.

"By Mr. Schwartz: Go ahead.

"By the Court: He can answer yes or no.

"To which ruling of the Court the plaintiff, by his counsel, then and there duly excepted and still continues to except.

"A. I guess I could.

"Q. They have got a statute over there that you send a petition or pleadings to the Secretary of State and he mails them over to Missouri, or wherever it might be.

"By Mr. Hullverson: I object to counsel testifying.

"By the Court: Objection sustained.

"By Mr. Hullverson: I move the jury be instructed to disregard it.

"By the Court: Gentlemen of the Jury, you are instructed to disregard that.

"By Mr. Schwartz: I know the Court takes judicial notice of the Illinois statutes. Do I have to produce the statutes?

"By Mr. Hullverson: I object to the whole things as immaterial.

"By the Court: Objection sustained as to what the statute is.

"Q. *Since you could have brought the suit over there, why didn't you bring it over there among your friends, where you live, and where they know you?*

"By Mr. Hullverson: I object to that as absolutely immaterial.

"By the Court: It is cross-examination. The witness may answer.

"To which ruling of the Court the plaintiff, by his counsel, then and there duly excepted and still continues to except.

"Q. *Mr. Hungate, since you could have brought the suit over there, why didn't you bring it over in Carlyle or Mount Vernon, where you live?*

"By Mr. Hullverson: I object to the question for the further reason there is no evidence he could have brought the suit over there.

"A. I was in the hospital. When I got out of the hospital I came over here.

"Q. You stayed over here after you got out of the hospital? A. After I got out of the hospital I was sent over here.

"Q. You were sent over here and stayed over here most of the time? A. Most of the time, yes.

"Q. Do you know a good many lawyers over there. Did you consult any lawyer in Illinois? A. No, sir.

"Q. Never talked to anyone there? A. No, sir.

"Q. You know a lot of them, don't you? A. I know quite a few lawyers over there, yes."

■ As the respondent contends, it is generally true that "the admission in evidence of facts entirely immaterial to the issues and without probative force cannot constitute prejudicial or reversible error," especially when the facts evidenced are of such character that they do not have a natural tendency to inflame or arouse hostile passions and their prejudicial effect is not otherwise made to appear. Span v. Jackson-Walker Coal & Mining Co., 322 Mo. 158, 16 S. W. (2d) 190. "Irrelevant" or "immaterial" evidence is excluded, not because it is unjustly inflammatory or prejudicial, but because its admission has a tendency to draw the jury's attention away from

the issues it has been called to resolve. Luechtefeld v. Marglous (Mo. App.), 151 S. W. (2d) 710. And, as a rule, the general objections of irrelevancy and immateriality call for no more action on the part of the court than the assigned objections imply,—if more is expected or required of the court or there are other reasons the cross-examination is improper or the evidence is inadmissible specific objection must be made for those reasons. Smith v. Fine, 351 Mo. 1179, 1197, 175 S. W. (2d) 761, 768. But, even though one is bound by his mere general objection of "irrelevancy" or "immateriality" yet in connection with his assignment he may demonstrate the prejudicial effect of the evidence received when it is obviously prejudicial in character. Luechtefeld v. Marglous, supra. Furthermore, when it is apparent that evidence "is self-evidently wholly incompetent for any purpose," or it is obviously unjustly inflammatory and prejudicial or "plainly on its very face, so good for nothing as to serve no purpose whatever in the case" the general objections of irrelevancy and immateriality are sufficient to call for action on the part of the trial court without further specification of reasons. State ex rel. West v. Diemer, 255 Mo. 336, 350, 164 S. W. 517, 521; Tutie v. Kennedy (Mo. App.), 272 S. W. 117, 122; Bailey v. Kansas City, 189 Mo. 503, 512, 87 S. W. 1182, 1185; State ex rel. Highway Comm. v. Pope, 228 Mo. App. 888, 897, 74 S. W. (2d) 265, 270. So in this case if the evidence and cross-examination complained of is wholly inadmissible for any purpose the general objections were sufficient to permit our examination of the questions unless the scope of the defendant's cross-examination of the plaintiff was entirely within the trial court's discretion.

 The cross-examination of witnesses is one of the safeguards to accuracy and truthfulness. Bartlett v. Kansas City Public Serv. Co., 349 Mo. 13, 16, 160 S. W. (2d) 740, 742. Its purpose is to sift, modify or explain what has been said, to develop new or old facts in a view favorable to the cross-examiner or to discredit the witness. 1 Thompson, Trials, Sec. 405; 3 Jones, Evidence In Civil Cases, Sec. 820. Of necessity, therefore, the scope and extent of cross-examination, in the usual civil suit, is discretionary with the trial court and its ruling in this respect will not be disturbed unless an abuse of discretion is clearly shown. Lehnert v. Otis Elevator Co. (Mo.), 256 S. W. 819, 822. Particularly is this true of collateral matters (issues not involved in the litigation) and a discrediting cross-examination. Arnold v. Alton R. Co., 348 Mo. 516, 154 S. W. (2d) 58; Holden v. Berberich, 351 Mo. 995, 174 S. W. (2d) 791. But this well-recognized practice and concept is subject to a fundamental restraint and limitation. The trial court's discretionary control of the scope and extent of cross-examination is subject to review for abuse. Dent v. Monarch Life Ins. Co., 231 Mo. App. 283, 98 S. W. (2d) 123; Dietz v. Southern Pac. Ry. Co. (Mo. App.), 28 S. W. (2d) 395. A cross-examination on prejudicial immaterial matter may require the granting of a new

trial. Wiener v. Mutual Life Ins. Co. of N. Y., 352 Mo. 673, 179 S. W. (2d) 39. Immaterial and incompetent evidence may not be got before the jury under the guise that it impeaches or discredits the witness. Schroeder v. Rawlings, 344 Mo. 630, 637, 127 S. W. (2d) 678, 682.

The really decisive question in this case is whether the cross-examination was permissible as reflecting upon the plaintiff's credibility.

It is entirely proper, either by way of introduction or cross-examination, to identify a witness and to inquire into his residence, antecedents, social connections and occupation, particularly as they reflect his credibility either for good or bad. 70 C. J., Sec. 919; 28 R. C. L., Sec. 199, p. 610; annotation 1 A. L. R. 1402. A party, as a witness, may be asked questions the answers to which tend to degrade him or reflect upon his credibility in these and other respects. Bush v. Kansas City Pub. Serv. Co., 350 Mo. 876, 169 S. W. (2d) 331. But if such inquiries are wholly immaterial and can have no effect other than their general tendency to prejudice the jury against the witness or party they are not the subjects of legitimate interrogation and are not permissible. For example, in a slander suit, a defendant was interrogated as to his domestic affairs and whether his wife had not left home at his request. It was held that the cross-examination went beyond the field of legitimate inquiry and could have had no effect other than to prejudice the jury against the defendant about a matter which threw no light on the issues involved. Hancock v. Blackwell, 139 Mo. 440, 455, 41 S. W. 205, 208. And, in State ex rel. Dick & Brothers Q. B. Co. v. Ellison, 287 Mo. 139, 229 S. W. 1059, under a general objection, it was held improper, ▮▮▮ in a negligence action, for the plaintiff to testify that his family consisted of ten children, two of whom lived at home.

In the instant case there was no objection by the defendant to the place of trial upon the ground of inconvenience, and the policy of the venue of transitory actions is not in issue or before us. 43 Har. L. R. 1217; Baltimore & Ohio R. Co. v. Kepner, 314 U. S. 44, 62 S. Ct. 6, 86 L. Ed. 28; Sacco v. Baltimore & Ohio R. Co., 56 Fed. Supp. 959. It was assumed that the plaintiff was well within his legal rights in instituting the action in St. Louis where the defendant resided rather than in Illinois where the cause of action accrued and the plaintiff resided. 67 C. J., Secs. 28, 55, 155; Mo. R. S. A., Sec. 871; Burroughs v. Lasswell (Mo. App.), 86 S. W. (2d) 962. Should an unfavorable inference be permitted or stigma attached to the fact that the plaintiff elected to file his suit in Missouri rather than in Illinois? Suppose the defendant had taken a change of venue, or that the cause had been removable to a United States District Court, would it have been proper for the plaintiff to have interrogated the defendant as to why he had not permitted the action to remain in the territorial jurisdiction of his residence where it would be supposed he had friends? It has

been held improper and error to argue the fact of the defendant's having taken a change of venue. Neff v. City of Cameron, 213 Mo. 350, 111 S. W. 1139, 18 L. R. A. (N. S.) 320. In the first place, the fact that the plaintiff has chosen a forum other than his residence does not prove that he is unworthy of belief or reflect upon his credibility any more than showing that he was a habitual litigant would tend to have the same effect or prove that his cause was without merit. Palmeri v. Manhattan Ry. Co., 133 N. Y. 261, 30 N. E. 1001. It is possible, despite the plaintiff's forty-five years' residence in a certain locality, that he had no friends there and yet there would be nothing in the fact that would reflect upon his credibility.

In the second place, should an inference unfavorable to credibility be permitted from the exercise of a legal right even though some obloquy or stigma might attach to its assertion? In Shull v. Kallauner, 222 Mo. App. 64, 300 S. W. 554, the defendant by cross-examination sought to discredit a witness by showing that he had gone through bankruptcy. The court appropriately said: ''The question then resolves itself into whether or not a man can be discredited by going through bankruptcy; that is, by having taken advantage of a legal right. It could hardly logically be stated that taking advantage of any right which the law gives would be discreditable. Would it be contended that the pleading of the Statute of Limitations could be given in evidence for the purpose of discrediting a witness and affecting his credibility? We think not.''

In view of all these things it was an abuse of discretion to permit the cross-examination and for that reason the judgment is reversed and the cause remanded. *Westhues, C.,* concurs; *Bohling, C.,* dubitante.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.