Tracy A. LOVE, Respondent and
Cross–Appellant,

v.

William G. BAUM, Appellant and
Cross–Respondent.

No. WD 43224.

Missouri Court of Appeals,
Western District.

Feb. 26, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 2, 1991.

G. Spencer Miller, Miller, Dougherty &
Modin, Kansas City, for appellant.

Scott Bethune, Kansas City, for respondent.

Before TURNAGE, P.J., and
LOWENSTEIN and ULRICH, JJ.

TURNAGE, Presiding Judge.

Tracy Love brought suit against William Baum for damages arising from an automobile collision. The jury returned a verdict in favor of Love and assessed damages at $16,000 and assessed 90% fault to Baum and 10% to Love. The court entered judgment thereon. Baum appealed from the judgment against him and Love appealed from that portion of the judgment which assessed 10% fault against her.

Baum contends the court erred in allowing Love to call him as a witness and bring out his criminal convictions. Love contends there was no evidence to support the submission of comparative fault against her. Affirmed.

In September, 1988, Love was driving her car southbound on Jesse James Road in Excelsior Springs. That road ran generally north and south. Baum was driving his car eastbound on Wornall. At the point Wornall intersects Jesse James there was a stop sign for Wornall traffic. Baum stopped at the stop sign on Wornall and began to make a left turn to go northbound on Jesse James. After Baum entered Jesse James the collision occurred.

Love's witnesses gave her speed at 30 to 35 m.p.h. prior to the accident while Baum's witnesses gave her speed as 40 to 55 m.p.h. The speed limit on Jesse James was 35 m.p.h.

The visibility from Wornall to the north on Jesse James was good and the accident occurred during daylight. Love's version of the accident was that Baum pulled out immediately in front of her. Baum's version was that he saw Love when she was one-eighth of a mile away and she was

driving between 50 and 55 m.p.h. He pulled onto Jesse James and he was struck. The accident occurred in the northbound lane of Jesse James and after the collision both cars were in the ditch on the east side of Jesse James.

Love called Baum as a witness pursuant to § 491.030, RSMo 1986.[1] Counsel examined Baum about the occurrence of the accident—location of the cars, speed, damage to the Baum car, and location of the cars after the accident. After examining Baum about the facts of the accident, counsel inquired if Baum had been convicted of the misdemeanors of speeding in Ray County and Clay County and for improper lane change. Counsel for Baum objected and the court overruled the objection. Thereafter counsel inquired about convictions for speeding in Clinton County, stealing a motor vehicle, burglary in Clay County and burglary, stealing and tampering in Ray County. Baum admitted all of the convictions.

### LOVE APPEAL

■ Love filed a motion for directed verdict at the close of all of the evidence seeking to have the court direct a verdict in her favor on the issue of her fault based on her excessive speed. The court overruled that motion and Love filed a motion for judgment notwithstanding the verdict raising the same issue. On this appeal Love contends the evidence failed to show that the collision would not have occurred except for Love's excessive speed. Love contends there was no evidence as to her distance from the intersection at the time Baum pulled onto Jesse James Road.

In determining whether there was sufficient evidence to support the giving of the instruction authorizing a finding of comparative fault on the part of Love this court must take the evidence of Baum as true and give him the benefit of all reasonable inferences drawn from the evidence. *Maxwell v. City of Springfield*, 705 S.W.2d 90, 95[11] (Mo.App.1986). Baum testified that he first saw Love's car about one-eighth of a mile from the intersection when he was

stopped. At that time Love was traveling from 50 to 55 m.p.h. The next time he saw the Love car was right before the accident occurred and she was still traveling at 50 to 55 m.p.h. The speed limit was 35 m.p.h. Another witness testified that he saw Love's car about 50 feet from the intersection and she was traveling about 45 m.p.h.

The rule urged by Love is stated in *Calvert v. Super Propane Corp.*, 400 S.W.2d 133, 139[5–7] (Mo.1966). The court there stated that the general rule is that the evidence must show that the collision would not have occurred except for the excessive speed shown by the evidence. The court further stated that this rule does not require direct, specific proof. The court stated:

> We take the rule, that direct, specific proof of causal connection between excessive speed and injury is unnecessary, to mean that a party need not always prove *at what* slower speed the injury could have been avoided. "It is sufficient if the facts proved are of such a nature and are so connected and related to each other, that the conclusion therefrom may be fairly inferred." Watt v. St. Louis Public Service Company, supra, loc. cit. 354 S.W.2d 891[1–3].

In *Maxwell*, the court held that estimates of speed, even if based upon extremely brief observations "may justify a submission of excessive speed if the force of the impact, the damage to the vehicles and the other physical facts permit an inference that the plaintiff was traveling at an excessive rate of speed." 705 S.W.2d at 95[11].

Baum testified that both cars were in the ditch on the east side of Jesse James after the accident and that his car had a smashed fender and door, broken frame, buckled roof, and crushed floor board. Baum testified that his speed before the accident never exceeded 5 to 10 m.p.h.

From the estimation given by the witness of the speed at which Love was traveling before the accident, and considering the force of the impact, the evidence of damage to the Baum car, and the location of both of

1. All sectional references are to RSMo 1986, unless otherwise indicated.

the cars after the accident, the jury could have inferred that Love was traveling at an excessive speed and that there was a causal connection between her excessive speed and the collision.

## BAUM APPEAL

■ Baum contends it was error to allow counsel to examine him concerning criminal convictions when counsel had called Baum as a witness. Baum concedes that *Wells v. Goforth*, 443 S.W.2d 155 (Mo. banc 1969), abrogated the rule that a party cannot impeach his own witness as to adverse party witnesses and allowed a party who called an adverse party as a witness to impeach the witness by showing prior inconsistent statements. Calling an adverse party as a witness is permitted by § 491.030 which states:

> Any party to any civil action or proceeding may compel any adverse party, or any person for whose immediate and adverse benefit such action or proceeding is instituted, prosecuted or defended, to testify as a witness in his behalf, in the same manner and subject to the same rules as other witnesses; provided, that the party so called to testify may be examined by the opposite party, under the rules applicable to the cross-examination of witnesses.

The right to bring out a criminal conviction on the part of a witness is provided in § 491.050. That section provides:

> Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer.

Under these statutes when Baum was called by Love as a witness, counsel examined Baum under the rules applicable to the cross-examination of witnesses. In *Hungate v. Hudson*, 185 S.W.2d 646, 649[6–10] (Mo.1945), the court discussed the role of cross-examination and stated "[i]ts purpose is to sift, modify or explain what has been said, to develop new or old facts in a view favorable to the cross-examiner or to discredit the witness."

When Love's counsel examined Baum, even though the examination was actually direct examination, under the statute it was conducted under the rules of cross-examination. As stated in *Hungate*, the role of cross-examination is to discredit the witness. Thus, in legal contemplation, Love was cross-examining Baum rather than conducting direct examination. Section 491.050 provides that conviction of a criminal offense may be shown to affect the credibility of the witness. That section further provides that the conviction may be shown either by the record or by the cross-examination of the witness. In this case Love was in legal effect cross-examining Baum under the provisions of § 491.030, thus, it was proper for Love to inquire about Baum's criminal convictions even though the examination had the appearance of being the direct examination.

Baum makes the further argument that it is unfair to allow a party to call an adverse party as a witness and to immediately bring out criminal convictions. *Hungate* held that cross-examination is subject to restraint and limitation by the trial court and the discretion exercised by the trial court in this regard is subject to review. Here, Love examined Baum fully about the facts of the accident and obtained Baum's version about how the accident occurred. It was only after such questions that Love inquired about Baum's criminal convictions. The fear expressed by Baum can be handled by the trial court on a case by case basis, but there is no manifestation of that fear in this case because Baum was fully examined about the facts of the accident before the question of criminal convictions was brought up.

When Love called Baum as a witness he examined Baum under the rules of cross-examination and, therefore, in reality the examination of Baum was cross-examination rather than direct examination. Section 491.050 permits criminal convictions to be brought out in cross-examination to affect the credibility of the witness. Because

examination of Baum is considered cross-examination, it was proper for Love to bring out Baum's criminal convictions in this case.

The judgment is affirmed. Costs of the Love appeal are assessed against Love and costs of the Baum appeal are assessed against Baum.

All concur.